UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CHRIS BAGBY,                          )
                                      )
              Plaintiff,              )
                                      )
v.                                    )          No. 2:18-CV-076
                                      )
CITY OF MORRISTOWN, *et al.*,         )
                                      )
              Defendants.             )


## MEMORANDUM OPINION

This matter is before the Court on Defendants' motion for summary judgment [Doc. 24]. Plaintiff has responded [Doc. 38], and Defendants have replied [Doc. 40]. Plaintiff was granted leave of this Court to file a sur-reply [Doc. 42], and Defendants have responded [Doc. 46]. For the reasons stated below, Defendants' motion for summary judgment [Doc. 24] will be **GRANTED in part** and **DENIED in part**.

I.  **Background**

The Plaintiff, a former patrol officer employed by the City of Morristown, filed suit against the City of Morristown, his supervising officers, and investigating officers, alleging that he was fired in retaliation for making statements regarding an illegal ticket quota within the Morristown Police Department at an open City Council meeting on April 4, 2017. [Doc. 1]. Plaintiff was hired as a police officer in May 2007 and had disciplinary problems primarily for insubordination from 2008 until his firing in 2017. [Doc. 24, Ex. 1, pp. 7-10]. In March 2017, Plaintiff was suspended for substandard work, specifically for

not filling out a citation correctly, becoming confrontational when asked to correct the citation, and then filling out the citation in an intentionally substandard way. [*Id*. at 10]. Plaintiff was advised that he could appeal his suspension at an open City Council meeting by Major Wisecarver. [Doc. 24, Ex. 2, p. 3].

At the Morristown City Council meeting on April 4, 2017, Plaintiff spoke during the open period where citizens can speak to the City Council. Plaintiff began his speech by stating:

> I'm Officer Christopher Bagby with the Morristown Police Department…The reason I'm up here is to appeal a disciplinary taken against me. I feel that the disciplinary action taken against me is nothing more than an aversion based on several incidents that have occurred with me with the department, first of which being starting with my captain, being that the captain has set forth a level of productivity, which is a standard – a generalized standard of citations issued. In my disciplinary action, there was substandard work. Last year alone, my performance work, I actually issued a total of 226 citations, compared to other individuals going from five up to 200 and – in the above 200 range.

[*Id*. at 2]. At this point, Plaintiff was interrupted, and the Mayor was informed that the process for appealing a suspension decision was laid out in the Civil Service Guideline by going through the Civil Service Board. [*Id*. at 3]. The Mayor was advised by the attorney that Plaintiff was allowed 3 minutes to speak. [*Id*.]. Plaintiff then alleged that there was an illegal ticket quota requirement set by his captain. [*Id*. at 4]. In his complaint, Plaintiff alleges that his public statements at the meeting were constitutionally protected speech on a matter of great public importance. [Doc. 1 at 3].

Following the City Council meeting, Defendant Wisecarver requested an internal affairs investigation into Plaintiff's claims that Captain Giles set an illegal ticket quota for

2

the officers. [Doc. 24, Ex. 1, p. 75]. Detective Captain Christian Newman investigated the allegations by asking officers under Captain Giles to issue signed statements and responses to any of Detective Newman's questions. [*Id*. at 76-78]. After Detective Newman's investigation, she concluded that Plaintiff's allegations against Captain Giles were unfounded and that Plaintiff had violated General Order 304.08 by not being truthful in an official proceeding not under oath [*Id*. at 87, 90-91]. Based on Detective Newman's findings and Plaintiff's past disciplinary issues, Chief Overholt recommended to the City Council that Plaintiff's employment be terminated. [*Id*. at 13]. Defendant Overholt, on May 16, 2017 requested that the Mayor of the City of Morristown and the City Council approve Plaintiff's firing due to the statements made at the City Council meeting on April 4, 2017. [*Id*.]. On May 16, 2017, Plaintiff was fired at the Morristown City Council meeting, after about 10 years of working as a patrol officer. [*Id*.].

Plaintiff alleges a violation of his First Amendment rights by being subjected to disciplinary action after advising the City Council of an illegal policy within the police department and a conspiracy to violate his First Amendment rights by using the police department's General Orders to prohibit Plaintiff from making statements that would discredit the police department to the public. [Doc. 1 at 4-6]. Plaintiff has also requested injunctive relief to enjoin the City of Morristown from continuing to use an illegal policy of setting quotas for traffic citations. [*Id*. at 7].

Defendants have filed a motion to dismiss the claims against them. [Doc. 24]. Defendants contend that Plaintiff's speech was not protected speech under the First Amendment because he was speaking as an employee attempting to appeal a disciplinary

3

action and not as a private citizen when he made the statements at the City Council meeting, that Plaintiff's interest in commenting on an alleged traffic ticket quota at the City Council meeting is substantially outweighed by the City of Morristown's interest in efficiently and effectively operating its police department, and that Plaintiff's speech was made with reckless disregard for the truth or falsity of its content. [*Id*. at 2-3]. Alternatively, Defendants Overholt, Wisecarver, and Giles assert that they are entitled to qualified immunity and that Plaintiff's arguments for conspiracy and injunctive relief are meritless and should be dismissed. [*Id*. at 3].

Plaintiff responds that his speech at the City Council meeting was mixed speech entitled to protection under the First Amendment. Plaintiff asserts that he was subject to adverse employment action based on this Constitutionally protected speech. [Doc. 38, p. 6-7]. Plaintiff further argues that he was speaking as a citizen on a matter of public concern, that his interest in speaking is not outweighed by the Morristown Police Department's interest in efficiency, and that his allegations were not knowingly false or recklessly made. [*Id*. at 7-13].

Defendants reply that Plaintiff contorts the proof, relies upon inadmissible evidence, mischaracterizes critical points in deposition testimony, and fails to put forward allegations sufficient to create a genuine issue of material fact. [Doc. 40]. Defendants argue that Plaintiff relies on several colloquial characterizations of the traffic citation expectations; is inconsistent in how he identifies the alleged "quota," sometimes asserting it was two tickets per day, 200 citations per year, "double digit" radar citations per month, and in the "20s"

4

Case 2:18-cv-00076-RLJ-CRW   Document 52   Filed 03/10/21   Page 4 of 24   PageID #: 887

action and not as a private citizen when he made the statements at the City Council meeting, that Plaintiff's interest in commenting on an alleged traffic ticket quota at the City Council meeting is substantially outweighed by the City of Morristown's interest in efficiently and effectively operating its police department, and that Plaintiff's speech was made with reckless disregard for the truth or falsity of its content. [*Id*. at 2-3]. Alternatively, Defendants Overholt, Wisecarver, and Giles assert that they are entitled to qualified immunity and that Plaintiff's arguments for conspiracy and injunctive relief are meritless and should be dismissed. [*Id*. at 3].

Plaintiff responds that his speech at the City Council meeting was mixed speech entitled to protection under the First Amendment. Plaintiff asserts that he was subject to adverse employment action based on this Constitutionally protected speech. [Doc. 38, p. 6-7]. Plaintiff further argues that he was speaking as a citizen on a matter of public concern, that his interest in speaking is not outweighed by the Morristown Police Department's interest in efficiency, and that his allegations were not knowingly false or recklessly made. [*Id*. at 7-13].

Defendants reply that Plaintiff contorts the proof, relies upon inadmissible evidence, mischaracterizes critical points in deposition testimony, and fails to put forward allegations sufficient to create a genuine issue of material fact. [Doc. 40]. Defendants argue that Plaintiff relies on several colloquial characterizations of the traffic citation expectations; is inconsistent in how he identifies the alleged "quota," sometimes asserting it was two tickets per day, 200 citations per year, "double digit" radar citations per month, and in the "20s"

4

per month; and has not demonstrated a triable question of fact on whether Defendant Giles specifically imposed an illegal "quota." [*Id*. at 2-3].

## II.    Analysis

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" Fed. R. Civ. P. 56(c)(1). This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Additionally, a party may "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

5

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id*. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id*. at 251-52.

## A. Admissibility of Recorded Statement Evidence

The Court will first address the issue of evidence that Plaintiff has submitted – Doc. 38, Ex. B ("Johnson Recording") and Doc. 38, Ex. E ("Rinehart Recording"). Rule 56 of the Federal Rules of Civil Procedure requires parties to support their factual assertions with admissible evidence, *see* Fed. R. Civ. P. 56(c), (e), and therefore contains a general requirement that materials cited in support of, or in opposition to, a motion for summary judgment be admissible in Court. *See Sperle v. Mich. Dept. of Corrections,* 297 F.3d 483, 495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact."). Subdivision (c)(2) of Rule 56 provides a mechanism by which a party may object that material cited to support a fact in a motion for summary judgment that has not been presented in an admissible form to create a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2). Once raised, this objection shifts the burden to the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated at trial. *See Smith v. Interim*

6

*Healthcare of Cincinnati, Inc.,* No. 1:10–cv–582, 2011 WL 6012971, at *4 (S. D. Ohio Dec. 2, 2011).

Defendants aver that Plaintiff's evidence should not be considered by the Court because the recordings cannot be authenticated[1] and are therefore not admissible. [Doc. 40, p. 5]. Plaintiff filed a sur-reply and attached an affidavit from Plaintiff regarding the Johnson Recording and a letter from Officer Reinhart's attorney regarding the Reinhart Recording [Doc. 42]. In light of Defendants' concession regarding the potential admissibility of the Johnson Recording contents at trial and the affidavit submitted by Plaintiff regarding the context and specifics of the recording in the sur-reply [Doc. 42, Ex. 1], the Court will consider the Johnson Recording in determining whether summary judgment is appropriate.

For the Reinhart recording, Plaintiff has not submitted an affidavit from Brian Reinhart or anyone else regarding the specific date of the recording or identity of all three speakers in the recording. Further, Plaintiff avers that the "Captain" referred to in the recording is not Captain Giles, but rather Captain Jones. [Doc. 38, p. 3, n. 4]. Defendants aver that Captain Jones retired in December 2011, a full 5 years before the recording allegedly occurred, casting doubts as to the time the recording took place. [Doc. 40, p. 6]. Plaintiff avers that he could call Officer Reinhart to the witness stand to authenticate the recording, but has provided no affidavit or deposition from Officer Reinhart that he would

---

[1] Plaintiff filed a sur-reply with leave of the Court attaching an affidavit from Plaintiff [Doc. 42], which Defendants concede that the Johnson recording [Doc. 38, Ex. B] was submitted in a provisionally admissible form and identifies a precise date, identity of all the speakers, and that Plaintiff had personal knowledge of the conversation. [Doc. 46, p. 2].

7

be able to identify all the speakers in the recording and could definitively say when the recording was made. [Doc. 42]. Plaintiff has also failed to show the relevance of the Reinhart Recording in determining whether Plaintiff's First Amendment rights were violated. Accordingly, as Plaintiff has not established that this recording is admissible or anticipated to be admissible in Court, and has not established that the recording is related to Captain Giles' alleged ticket quota or Plaintiff's termination, the Court will not consider the Reinhart Recording in determining whether summary judgment is appropriate.

## B. First Amendment Retaliation Claim, Count I

Defendants aver that Plaintiff has failed to make out a *prima facie* case of First Amendment retaliation. [Doc. 28, p. 11]. They have also stated that, for the purposes of summary judgment, Defendants are not contesting the second and third elements of a First Amendment retaliation claim, and instead argue that Plaintiff has not established the first element – that Plaintiff was engaged in constitutionally protected speech. [Doc. 40, p. 7]. In light of this concession for the purposes of summary judgment, the Court will only address the first element.

Defendants assert that Plaintiff's speech is not subject to First Amendment protections for 3 reasons: 1) Plaintiff's speech was made as an integral part of an attempt to appeal a disciplinary action and not made as a private citizen, 2) the City's interest outweighs the First Amendment concerns implicated on balance, and 3) Plaintiff's speech was made with reckless disregard to the truth or falsity of the criminal allegations levied. [Doc. 28].

8

Plaintiff argues that his speech was a matter of public concern and that Plaintiff's speech was "mixed speech" subject to First Amendment protection, that the City's interest does not outweigh the First Amendment concerns implicated on balance, and Plaintiff's allegation regarding the alleged ticket quota was not knowingly false or recklessly made. [Doc. 38].

### 1. Was Plaintiff's speech subject to First Amendment protection?

In determining whether Plaintiff's speech is subject to First Amendment protection, the threshold inquiry is whether the speech addressed a matter of public concern based on its content, form, and context of a given statement as revealed by the whole record. *Rankin v. McPherson,* 483 U.S. 378, 384 (1987); *Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1186 (6th Cir. 1995); *see also Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Matters of public concern include speech that "relat[es] to any matter of political, social, or other concern to the community." *Id*. at 146. We must determine whether the relevant speech "involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg v. Hous. Auth. of Irvine,* 253 F.3d 891, 898 (6th Cir. 2001) (internal quotations omitted). Thus, speech falling into this category includes informing the public that a governmental entity failed to "discharg[e] its governmental responsibilities" or "bring[ing] to light actual or potential wrongdoing or breach of public trust [on the part of a governmental entity or any officials therein]." *Connick,* 461 U.S. at 148.

The Supreme Court has emphasized that the employee must be speaking as a citizen, not as an employee for personal interest purposes. *Id*. at 146–47. "Internal personnel

9

disputes or complaints about an employer's performance" do not touch upon a matter of public concern and therefore fall outside the scope of First Amendment-protected speech. *Brandenburg,* 253 F.3d at 898; *see also Jackson v. Leighton,* 168 F.3d 903, 910–11 (6th Cir. 1999). Additionally, in distinguishing between matters of public and private concern, the focus is not on "what might incidentally be conveyed by the fact that the employee spoke in a certain way, [but] the *point* of the speech in question." *Dambrot,* 55 F.3d at 1187 (internal quotations omitted). "Controversial parts of speech advancing only private interests do not necessarily invoke First Amendment protection." *Id.* However, the employee's entire speech does not have to focus on matters of public concern, so long as some portion of the speech does. *Rahn v. Drake Ctr., Inc.,* 31 F.3d 407, 412 (6th Cir. 1994) (citing *Connick,* 461 U.S. at 146–49).

In analyzing whether an employee's speech touches upon a matter of public concern, the Sixth Circuit has consistently observed the dichotomy *Connick* presented: speaking as a *citizen* (albeit in the employee role) versus speaking as an employee *for personal interest.* As *Connick* emphasized, the focus of the speech is on the point of the speech as opposed to the role of the speaker in saying it. *See* 461 U.S. at 148–49. Specifically, Courts consider (1) the point or focus of the speech in question and (2) whether the point "relat[es] to any matter of political, social, or other concern to the community." *Id.* at 146 (internal citations omitted). "[T]he pertinent question is not *why* the employee spoke, but *what* he said...." *Farhat v. Jopke,* 370 F.3d 580, 591 (6th Cir. 2004) (emphasis in original). Courts are concerned with the distinction between matters of public concern and those only of private interest, "not [between] civic-minded motives and self-serving motives." *Chappel*

10

*v. Montgomery Cnty. Fire Protection,* 131 F.3d 564, 575 (6th Cir. 1997). Matters of public concern are those that may be "fairly characterize[d] ... as relating to any matter of political, social, or other concern to the community." *Rahn,* 31 F.3d at 412. Speech on such matters is protected because the First Amendment is concerned not only with a speaker's interest in speaking, but also with the public's interest in receiving information. *See Connick,* 461 U.S. at 145, 149; *Pickering v. Board of Educ. of Township High Sch. Dist. 205,* 391 U.S. 563, 571–72 (1968). However, the Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Defendants point to Plaintiff's job description and the department's general orders to report and adequately investigate suspected criminal conduct as evidence that Plaintiff was acting as an employee and not a private citizen. However, putting too much emphasis on a job description risks allowing employers to "restrict employees' rights by creating excessively broad job descriptions." *Id.* at 424. While job descriptions may be informative, "[t]he proper inquiry is a practical one." *Id*. The "critical question ... is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228 (2014). Sixth Circuit precedent advises that the exception for employee speech "must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his employment." *Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015). On the other hand, speech made "pursuant

11

to *ad hoc* or *de facto* duties not appearing in any written job description is nevertheless not protected if it owes its existence to [the speaker's] professional responsibilities." *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010) (alteration in original) (internal quotations omitted).

Here, while Plaintiff's job description contains some responsibilities that arguably include investigating criminal activity, it is not reasonable to conclude that investigating the police department for an illegal ticket quota falls under Plaintiff's job description as a patrol officer. Further, Plaintiff was not being disciplined for failing to meet a ticket quota, but for omitting information from a citation and intentionally writing poorly when instructed to correct his mistake. While Plaintiff may have been speaking at the City Council meeting with the intent to appeal the disciplinary action against him, the focus of his speech was not his personal wrongdoing, but potential wrongdoing in the police department. *See See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) ("Statements exposing possible corruption in a police department are exactly the type of statements that demand strong First Amendment protections."); *see also Solomon v. Royal Oak Twp.,* 842 F.2d 862, 865–66 ("[S]peech disclosing public corruption is a matter of public interest and, therefore, deserves constitutional protection.") (citing *McMurphy v. City of Flushing,* 802 F.2d 191, 196 (6th Cir. 1986) ("Obviously, the public is concerned with how a police department is operated, and efforts to give public exposure to alleged misconduct are protected.").

Plaintiff's words regarding an illegal ticket quota in the police department would certainly fall under "bring[ing] to light actual or potential wrongdoing or breach of public

trust [on the part of a governmental entity or any officials therein]" as writing tickets to meet a ticket quota would be a breach of public trust and shows potential wrongdoing as it is against Tennessee law to institute a ticket quota. *Connick,* 461 U.S. at 148

Therefore, drawing all reasonable inferences from the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff's speech is subject to First Amendment protection for purposes of summary judgment.

### 2. *Does the City's interest outweigh the First Amendment concerns on balance?*

After determining that Plaintiff's speech is protected under the First Amendment, the Court next applies the *Pickering* test to determine the balance of interests between the parties. In accordance with the balancing test created in *Pickering,* public employee speech, even if touching on matters of public concern, will not be constitutionally protected unless the employee's interest in speaking on these issues "outweigh[s] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000); *Pickering*, 391 U.S. at 568. The Court is to "consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Kentucky,* 24 F.3d 1526, 1536 (6th Cir. 1994), *cert. denied,* 513 U.S. 947 (1994) (internal citations omitted). In striking the balance, the Sixth Circuit has analyzed several factors including whether the speech:

13

related to an issue of public interest and concern; was likely to foment controversy and disruption; impeded the department's general performance and operation; affected loyalty and confidence necessary to the department's proper functioning; subverted department discipline; was false and the employer could not have easily rebutted or corrected the errors; and was directed toward a person whom the speaker normally contacted within the course of daily work.

*City of Elyria*, 502 F.3d at 492–93.

Here, as discussed above, Plaintiff's speech related to an issue of public concern, and Defendants must meet a high showing that their interest in regulating the speech outweighs Plaintiff's First Amendment rights. *See Connick*, 461 U.S. at 152 (explaining that the greater extent to which the speech involves public concern, the stronger the showing of disruption necessary); *see, e.g. Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 897 (6th Cir. 2003) (finding that a board of education engaging in illegal hiring practices is a "concern to the community"); *City of Elyria*, 502 F.3d at 492 (holding that operations of public employers "are of substantial concern to the public," and thus, a public employee's right to comment on such matters are protected).

On balance, Plaintiff's statements at the City Council meeting do not undermine Defendants' interests so substantially as to justify prohibiting or punishing his speech. Plaintiff's speech did not interfere with his patrol officer duties, advocate any disruption or defiance on the part of employees, prevent discipline by superiors, and was not directed toward a person he normally contacted within the course of his daily work. He simply raised his concern about a matter of public importance—that the Morristown Police Department has instituted an illegal ticket quota. There is no indication that Plaintiff's speech would materially disrupt his work environment or the performance of his duties.

14

Further, as discussed below, there are genuine issues of material fact regarding the veracity of Plaintiff's claims. Accordingly, the *Pickering* balancing test favors Plaintiff.

This conclusion is bolstered by the First Amendment's focus on "not only ... a speaker's interest in speaking, but also with the public's interest in receiving information." *Banks*, 330 F.3d at 896 (quoting *Chappel*, 131 F.3d at 574) (finding that a teacher's airing of issues in a school district were of public interest because "[t]he community has an interest in knowing when the district does not follow state law or its own hiring practices" and such practices "could affect the community"). The Supreme Court described the "employee-speech jurisprudence" as "acknowledg[ing] the importance of promoting the public's interest in receiving the *well-informed* views of government employees engaging in civic discussion." *Garcetti*, 547 U.S. at 419 (2006) (emphasis added). Central to the concept of protecting the speech of government employees is the idea that public employees are the most likely to be informed of the operations of public employers and that the operation of such entities is "of substantial concern to the public." *City of Elyria*, 502 F.3d at 492 (quoting *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004)); *see also Garcetti*, 547 U.S. at 419. "Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) (*per curiam*).

### 3. Was Plaintiff's allegation knowingly false or recklessly made?

A public employee is not required to prove the truth of his speech to secure the protections of the First Amendment. *See Pickering,* 391 U.S. at 571–72. Although protection may not be available when a public employee knowingly or recklessly makes

15

false statements, it is Defendants' burden to establish that Plaintiff knew or was recklessly indifferent to the fact that his speech was false. *Williams,* 24 F.3d at 1535–36.

Looking at the evidence in the light most favorable to Plaintiff there is a genuine issue of material fact regarding whether Plaintiff's allegation was knowingly false or recklessly made. Defendants rely solely on the conclusions of Detective Captain Newman in asserting that Plaintiff's allegations were false. However, the record contains contradicting statements regarding the alleged ticket quota and raises questions about the thoroughness and reliability of the Internal Affairs investigation and its conclusions which must be reconciled by a jury. Specifically, the Johnson Recording contradicts with Officer Johnson's written statement provided to Detective Captain Newman during the Internal Affairs investigation creating a question of credibility to be resolved by a jury and the evidence from Detective Overholt's deposition that there was a former employee who complained of a ticket quota the same year as Plaintiff indicating that Plaintiff may not have known his speech was false or was reckless indifferent as to its veracity. [Doc. 38, Ex. B; Ex. A, p. 36]; [Doc. 24, Ex. 1, pp. 52-57]. Detective Captain Newman's testimony in her deposition that Detective she did not interview any officers in person, did not interview Defendant Overholt even though he was listed as a witness on the complaint form, did not allow anonymous answers, did not question officers who had previously worked under Defendant Giles who had transferred to other departments, only investigated whether officers were required to write two citations per day and did not address the "200 a year or lose your gear" allegation, and her reasoning for concluding that Plaintiff was acting maliciously based on his tone of voice and his past behaviors could lead a jury to

16

conclude that the Internal Affairs investigation was not thorough or credible and that reliance on the conclusions contained in the investigation report was unreasonable. [*See* Doc. 24, Ex. 1, pp. 76-78, 82-84, 88, 101-102; 105-111, 116-124]. Accordingly, Defendants have failed to meet their burden to show a knowingly false or reckless disregard for the truth in Plaintiff's allegation.

### C. Qualified Immunity

Defendants Overholt, Giles, and Wisecarver ("Individual Defendants") have asserted that they have qualified immunity. [Doc. 28, pp. 26-30]. Plaintiff responds that the officers are not entitled to qualified immunity because no reasonable official could have believed that Plaintiff's statements were knowingly or recklessly false. [Doc. 38, p. 16].

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation"; it is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511 (1986); *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310–11 (6th Cir. 2005) (citation omitted). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry,* 482 F.3d 840, 847 (6th Cir. 2007) (citation omitted). "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Holzemer v. City of Memphis,* 621 F.3d 512, 518–19 (6th Cir. 2010) (citations omitted).

17

A three-step analysis is employed by the Sixth Circuit for analyzing claims of qualified immunity. First, a court determines whether, "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred"; second, a court considers "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and third, a court determines "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Holzemer,* 621 F.3d at 519 (citations omitted). There is no requirement that this inquiry be performed in sequence, *id.* (citing *Pearson v. Callahan,* 555 U.S. 223 (2009)), and if a plaintiff fails to establish any one element, the defendant's request for qualified immunity must be granted. *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005) (citation omitted). In analyzing a summary judgment motion based on qualified immunity, a court must adopt the plaintiff's version of the facts. *Parsons v. City of Pontiac,* 533 F.3d 492, 500 (6th Cir. 2008) (citation omitted). Granting summary judgment on the basis of qualified immunity is inappropriate if there is a factual dispute involving an issue on which the question of immunity turns or if the undisputed facts show that a defendant's conduct did indeed violate clearly established rights. *Gardenhire v. Schubert,* 205 F.3d 303, 311 (6th Cir. 2000) (citations omitted).

Individual Defendants aver that even if Plaintiff can establish a prima facie case of a constitutional violation, Individual Defendants are entitled to qualified immunity because they reasonably believed that the governmental interest outweighed the Plaintiff's right to speak in these circumstances and that the Plaintiff's statements were knowingly false or

18

made with reckless disregard for the truth. [Doc. 28, p. 28]. Individual Defendants further aver that none of them had the power or authority to terminate Plaintiff's employment, and Defendants Giles and Wisecarver played no role whatsoever in the decision to terminate Plaintiff's employment. [*Id*.].

Plaintiff argues that he has established a prima facie case of a constitutional violation, and that it was unreasonable for Chief Overholt to rely on Captain Newman's findings in pursuing Plaintiff's termination. [Doc. 38, p. 17]. Plaintiff asserts that his statements were not knowingly false or made with reckless disregard for the truth. [*Id*. at 18]. Further, Plaintiff asserts that because Defendant Overholt sought to have the City Council approve Plaintiff's termination and there are questions of fact as to the extent of Defendants Giles and Wisecarver's roles in seeking Plaintiff's termination, Individual Defendants are not entitled to qualified immunity. [*Id*. at 17].

The Court will first address the issue of whether Individual Defendants played a role in Plaintiff's termination such that they are potentially liable for Plaintiff's First Amendment claim. "[A]n influential recommender can be liable under § 1983 without being the final decisionmaker, if the recommendations are shown to be sufficiently influential." *Ward v. Athens City Bd. of Educ.*, 187 F.3d 639 (6th Cir. 1999). As Plaintiff points out, it is undisputed that Defendant Overholt recommended to the City Council that Plaintiff be terminated and there are questions of fact regarding the level of influence this recommendation had on the City Council's decision to terminate Plaintiff's employment. Because of this direct action of recommending Plaintiff's termination based on Plaintiff's speech at the city council meeting, Defendant Overholt is potentially liable. Plaintiff asserts

19

that Defendant Wisecarver could be liable due to his recommendation that Plaintiff speak at the city council meeting and that Defendant Giles could be liable due to his denial of an illegal ticket quota. [*Id*.]. However, nothing in the record suggests that Defendants Giles and Wisecarver recommended that Plaintiff be terminated or had any influence over the city council's decision to terminate Plaintiff. Accordingly, Defendants motion for summary judgment for the First Amendment retaliation claim, Count I, regarding Defendants Giles and Wisecarver will be **GRANTED**, and Count I will be **DISMISSED** as to Defendants Giles and Wisecarver.

The Court will now address whether Defendant Overholt is entitled to qualified immunity. As discussed above, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has established that a Constitutional violation occurred. It is also clearly established in the Sixth Circuit that a public official cannot retaliate against an individual for an exercise of his constitutional rights. *Ryan v. Blackwell*, 979 F.3d 519, 528 (6th Cir. 2020). Therefore, the issue of qualified immunity in this case turns on "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Holzemer,* 621 F.3d at 519 (citations omitted).

Here, as discussed above, there are genuine issues of fact as to whether Plaintiff's statements were knowingly false or made with reckless disregard for their truth. Because Defendants aver that Plaintiff was terminated for violating the code of conduct by making an untruthful allegations during an official proceeding not under oath and making false allegations in general, the veracity of Plaintiff's allegations and Defendants' reliance on

20

the conclusions from the internal affairs investigation are issues on which the question of immunity turns. As discussed above, there are genuine issues of material fact regarding those issues looking at the evidence in the light most favorable to Plaintiff. Therefore, Defendant Overholt is not entitled to qualified immunity.

Accordingly, Defendants motion for summary judgment on the First Amendment retaliation claim, Count I, will be **GRANTED** as to Defendants Giles and Wisecarver, and **DENIED** as to all other Defendants.

### D. Conspiracy Claim, Count II

Defendants argue that the 42 U.S.C. § 1983 claim against Defendants should be dismissed because Plaintiff has failed to show that a single plan existed. Defendants assert that the affirmative proof expressly rejects the notion that Individual Defendants had a "meeting of the minds" or a common plan to violate Plaintiff's constitutional rights. [Doc. 40, pp. 23-24]. Defendants assert that Plaintiff has not even attempted to prove specific, wrongful conduct on the part of each member of the conspiracy and that there must be an individualized assessment for each conspirator. [*Id*. at 24].

Plaintiff responds that he has produced circumstantial evidence of a conspiracy. Plaintiff asserts that Defendant Giles was present when Defendant Wisecarver told Plaintiff he could speak at the city council meeting. Plaintiff also asserts that because he was fired partly for going outside normal procedure by speaking at the city council meeting, there is circumstantial evidence of a conspiracy to contrive a reason to fire Plaintiff. [Doc. 38, p. 20].

For a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must prove that "a single plan" existed, that each "alleged coconspirator shared in the general conspiratorial objective," and that "an overt act was committed in furtherance of the conspiracy[.]" *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). An "express agreement" need not exist, and "[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id.* A complaint must identify the alleged conspiracy with more than "vague and conclusory allegations[.]" *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (quoting *Heyne v. Metro. Nashville Public Schs.*, 655 F.3d 556, 563 (6th Cir. 2011)).

Here, even looking at the evidence in the light most favorable to Plaintiff, Plaintiff has failed to state a valid 42 U.S.C. § 1983 conspiracy claim. Plaintiff has not shown that a single plan existed among Individual Defendants, that each defendant shared in the objective to deprive him of his constitutional rights, or that each defendant committed an overt act in furtherance of the conspiracy. Accordingly, Defendant's motion for summary judgment regarding the 42 U.S.C. § 1983 conspiracy claim will be **GRANTED**¸ and Count II will be **DISMISSED**.

### E. Injunctive Relief, Count III

Defendants assert that the propriety of Plaintiff's claim for injunctive relief, Count III, is inexorably tied to the Court's resolution of Plaintiff's constitutional claims on the merits. Defendants also argue that Count III should be dismissed as to Individual Defendants as a claim for injunctive relief does not lie against a defendant sued in his individual capacity only. [Doc. 28, p.32].

22

The Sixth Circuit has held that "[j]ust as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.,* his official capacity." *Milligan v. United States,* No. 3:07–1053, 2008 WL 1994823, at *15 (M. D. Tenn. May 2, 2008) (quoting *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.,* 150 Fed. Appx. 389, 401 (6th Cir. 2005)). The question is whether the injunction relates only to a defendant's official capacity.

The Court first notes that, although not explicitly conceding to a grant of summary judgment on his injunctive relief claim, Plaintiff failed to address Defendants' motion to dismiss Count III entirely. When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the Court to assume opposition to the motion is waived and grant the motion. *Humphrey v. U.S. Att'y Gen.'s Office,* 279 Fed.App'x. 328, 331 (6th Cir. 2008). Thus, it appears Plaintiff does not oppose Defendant's motion with respect to Claim III of his Complaint, the substance of which is that the injunctive relief claim is inexorably tied to the First Amendment claim, and that Claim III be dismissed against Individual Defendants. Accordingly, Defendants' motion will be **GRANTED in part** and **DENIED in part** and Claim III will be **DISMISSED** as to Individual Defendants *only.*

## III. Conclusion

Accordingly, for the forgoing reasons, Defendants' motion for summary judgment [Doc. 24] will be **GRANTED** for Count I as to Defendants Giles and Wisecarver, and

23

**DENIED** for Count I as to Defendants City of Morristown and Overholt; will be **GRANTED** for Count II, and Count II will be **DISMISSED**; and will be **GRANTED in part** for Count III as to Defendants Giles, Wisecarver and Overholt, and **DENIED in part** for Count III as to Defendant City of Morristown. An order consistent with this opinion will be entered.

       **IT IS SO ORDERED.**

                    ENTER:

                         s/ Leon Jordan
                    United States District Judge